IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAKESHA JACKSON | CRIMINAL ACTION FILE NO.<br><br>1:24-cr-56-LMM-JKL-9 |

### REPORT AND RECOMMENDATION

On February 14, 2024, a federal grand jury in the Northern District of Georgia returned a 38-count superseding indictment against 10 defendants, all arising out an alleged conspiracy to distribute controlled substances and engage in money laundering between July 2018 and the date of the indictment. [*See* Doc. 1.] Lakesha Jackson, one of those defendants, is charged with money laundering conspiracy under 18 U.S.C. § 1956(h); money laundering concealment under 18 U.S.C. § 1956(a)(1)(B)(i); and engaging in monetary transactions over $10,000 with property derived from unlawful activity in violation of 18 U.S.C. § 1957—all in relation to the alleged November 5, 2020 purchase of a Mercedez Benz GLE for approximately $100,000, using a $50,000 cashier's check. [*Id.* at 3-7 (Counts Three, Six, Twenty-Three).]

Pending before the Court is Ms. Jackson's Motion to Suppress Evidence Seized from Defendant's Cell Phone ("Motion to Suppress"), in which she (1) seeks to suppress "any information seized from her cell phone" and (2) asks the Court to hold an evidentiary hearing—at which she would have the not just the lead agent and lead prosecutor testify, but also have the government produce "any other agent involved" in the search of her phone and "any other individual in the Department of Justice with whom [the lead prosecutor] communicated regarding this matter." [Doc. 186; *see also* Doc. 229 (supplement).] The government has filed a brief in opposition to the motion. [Doc. 235.] The deadline for any additional reply brief has passed. The motion is therefore ripe for consideration.

For the reasons that follow, it is **RECOMMENDED** that Ms. Jackson's motion be **DENIED**.

I.   **FACTS**

In her supplemental motion, Ms. Jackson contends that the following facts would be expected to be adduced at an evidentiary hearing on the issues raised in her motion. [*See* Doc. 229 at 1.] On September 1, 2022, Special Agent Andrea Boone and other law enforcement officers ("LEOs") attempted to interview Ms.

Jackson regarding a vehicle purchase, presumably the one cited in the indictment. [*Id.* at 2.] Following the interview, SA Boone wrote the report of that session. [*Id.*] The next day, Ms. Jackson retained her present counsel, attorney Paul Kish, who then wrote an email to one of the other agents accompanying SA Boone a day earlier, in order to determine which prosecutor has been assigned to the investigation. [*Id.*] Assistant United States Attorney John DeGenova was also apprised of Mr. Kish's representation of Ms. Jackson that same day. [*Id.*] On September 6, 2022, Jackson and her counsel declined further invitation for interviews with the government. [*Id.*]

As noted, the indictment in this case was issued roughly a year and a half later, on February 14, 2024. [Doc. 1.] Ms. Jackson was arrested in connection with the indictment on February 23, 2024, and upon her arrest, her phone was seized. [Doc. 229 at 2.]

According to defense counsel, during his review of "the second batch of discovery,"[1] on May 16, 2024, he realized that the phone's contents had been imaged dating back to September 2022, and that the contents therefore included

---

[1] Defense counsel explains that the government provided this discovery on April 30, 2024. [Doc. 229 at 2.]

3

material from the time period during which Mr. Kish represented Ms. Jackson. [*Id.*]  As a result, defense counsel informed AUSA DeGenova that Ms. Jackson's phone "phone definitely contained privileged communications between Ms. Jackson" and counsel.  [*Id.* at 3.]  AUSA DeGenova, meanwhile, responded, "As is our practice, we are addressing issues about potentially privileged information and will follow up with you."  [*Id.*]

On October 7, 2024, Ms. Jackson filed her present motion to suppress. [Doc. 186.]  Two days later, on October 9, AUSA DeGenova informed defense counsel that AUSA Eric White had been assigned to the filter review team for the phone seized from Ms. Jackson.  [Doc. 229 at 3.]  And another two days after that, at a pretrial conference before the undersigned, the government confirmed its appointment of a filter team.  [*Id.*]  Ms. Jackson admits that she "did not challenge the use of the taint team" at the time.  [*Id.*]  The Court directed defense counsel and the government to confer about status of the phone review and production, and requested that the parties advise the Court if matters arise that require intervention.  [Doc. 210 at 4.]

Mr. Kish and AUSA White had multiple communications over the next several weeks.  [Doc. 229 at 3.]  The government "proposed removing privileged

4

items from the phone and then turning the device over to the investigative team," which Mr. Kish agreed with "to a point." [*Id.* at 3-4.] More specifically, Mr. Kish says that he requested a "deeper review" to determine whether anyone from the investigative team had accessed the phone during the roughly three-month period between when it was seized in February 2024 and when he spoke with AUSA DeGenova about the privilege issue in May 2024. [*Id.* at 4.]

On December 6, 2024, then, AUSA White informed defense counsel that "my understanding is that no one from the prosecution team (agents or prosecutors) has accessed the contents of the cell phone. If I learn anything different I will inform you right away." [Doc. 229 at 4.] Defendant asserts that, on December 17, 2024, however, AUSA White again messaged Mr. Kish, this time to inform him that:

> The Filter Team determined that Special Agent Andrea Boone observed some of the potentially privileged material that we discussed previously. After SA Boone encountered this information, she immediately notified AUSA John DeGenova and stopped reviewing the phone.

[*Id.*] Ms. Jackson then filed her supplement to the motion to suppress on January 3, 2025. [Doc. 229.]

In its response to the motion, the government adds the following facts. [*See* Doc. 235.] During its review, the filter team provided a complete and unredacted image of Ms. Jackson's phone to defense counsel, so that they could review it for privileged information; however, they failed to identify any additional files that they believed were privileged. [*Id.* at 4.] And before Ms. Jackson filed her supplement in January 2024, the government offered to self-suppress the communications observed by SA Boone, as well as the other files located on the phone by the filter team that were identified as possibly privileged—either under the attorney-client privilege or under the marital privilege. [*Id.* at 2.] That offer was refused, and Ms. Jackson filed her present motion. [*Id.*]

The government has placed the purportedly privileged material into evidence. [*See* Docs. 235-1, 235-2, 235-3.][2] Those include a text message thread between Ms. Jackson and her wife, wherein Ms. Jackson sent a screenshot of an email from Mr. Kish. [Doc. 235 at 4.] It was this text message thread that SA Boone encountered, which as just noted, included the email screenshot. [*Id.*] More specifically, the text message thread includes a message from Ms. Jackson

---

[2] The government seeks to file its response and exhibits under seal; that request is **GRANTED**. [Doc. 235.]

6

indicating that she had reached out to Mr. Kish; a message from Ms. Jackson's wife seeking more information; and a responsive message from Ms. Jackson explaining that she reached out to "ask[] if he thought [the case] was closed," and attaching the email screenshot.  [Doc. 235-2 at 2-33.]  In that screenshot, meanwhile, Mr. Kish states:

> Lakesha-thanks for reaching out.  I have not received any additional information.  However, the matter is definitely not "closed."  It is unfortunately very common for these investigations to go on for quite a while.  The worst thing we could do would be to reach out to the prosecutor.  I suggest that we revisit this in a few months.

[Docs. 235-1 (screenshot); *see also* 235-2 (messages from text thread).]  The thread ends with Ms. Jackson stating to her wife, "I asked if I told him that they seized the house, and she was informed by her attorney that it was closed."  [Doc. 235-2 at 2.]  According to the government, the foregoing is "the only potentially privileged information that was encountered by anyone on the prosecution team."  [Doc. 235 at 5.]

In addition to the foregoing evidence, the government has disclosed the other information the filter team uncovered in its review of the phone that was potentially privileged:  (1) three additional copies of the screenshot discussed above, and (2) two copies of a screenshot of a different email from Mr. Kish to

Ms. Jackson and her wife, explaining that he still had not heard any updates from the government, that the lack of updates was not unusual, that they should continue to be careful about not discussing the situation with other people, and that he would update them if he received any news. [*See* Doc. 235 at 5; Doc. 235-3 (second email screenshot).]

The filter team identified all of these files for Mr. Kish, in addition to providing the full phone image. [Doc. 235 at 5.] Mr. Kish and Ms. Jackson, however, failed to identify any other potentially privileged [*id.*], meaning that the foregoing is the full universe of potentially privileged material the parties have identified in this case. In terms of the material to be provided to the prosecution team, the government states that it will remove (1) all of the foregoing evidence, and (2) all communications between Ms. Jackson and her wife that are stored on the cell phone image, as (a) Mr. Kish has indicated he represents both Ms. Jackson and her wife in connection with this case, and (b) there may be marital privilege protections at play in addition to the attorney-client privilege protections afforded by Ms. Jackson's relationship with counsel. [*Id.* at 6.]

## II. DISCUSSION

As noted above, based upon SA Boone's review of the text message thread, including the screenshot of Mr. Kish's first email, Ms. Jackson seeks both (1) suppression of "any information seized from her cell phone," and (2) an evidentiary hearing at which myriad prosecutors and LEOs—essentially anyone involved in the prosecution or filter teams in this case—would be examined about the "perusing of her privileged communications." [Doc. 186 at 3.] In support, Ms. Jackson cites only two opinions, both of which merely recognized, first, that the use of filter teams does not, on its own, amount to a violation of any constitutional or common law rights; second, that the sufficiency of any filter protocol depends on the circumstances of the case—including the types of materials seized and the purposes of the search; and third, that in certain circumstances, those protocols may need to be modified by the court to protect privileged material. *See In re Sealed Search Warrant & App. for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1249 (11th Cir. 2021); *In re Search Warrants*, No. 1:21-CV-04968-SDG, 2021 WL 5917983, at *4 (N.D. Ga. Dec. 15, 2021). [*See also* Doc. 229 at 6 (citing same).] But Ms. Jackson's motion and supplement do not challenge any particular aspect of the filter team's protocols,

which she admits her attorney largely agreed with. [*See* Doc. 229 at 3-4.] Rather, she seeks suppression of all information from the phone and a wide-ranging evidentiary hearing to determine if there are any other possible causes for concern.

The problem with Ms. Jackson's position is that she has not established that any remedy is warranted here other than suppression of the material from her phone that the government identified as potentially privileged.[3] The Eleventh Circuit has been clear that "in most cases 'where there is an intrusion on the attorney-client relationship, the remedy for such a violation is not dismissal but the suppression of any evidence so obtained'" — that is, the evidence protected by the attorney-client privilege. *United States v. DeLuca*, 663 F. App'x 875, 879 (11th Cir. 2016) (cleaned up) (quoting *United States v. Sander*, 615 F.2d 215, 219 (5th Cir. 1980)); *see also United States v. Ofshe*, 817 F.2d 1508, 1515 (11th Cir. 1987) (requiring a showing of "demonstrable prejudice" before dismissing an indictment as a sanction for a violation of a defendant's attorney-client privilege) (citing *United*

---

[3] The parties do not dispute that for present purposes, the material identified by the government—the text message thread and the various copies of the two screenshots of messages between Ms. Jackson and Mr. Kish—should indeed be treated as privileged. Accordingly, for purposes of the present motion, the Court will do so as well.

*States v. Morrison*, 449 U.S. 361 (1981)). Only when a defendant establishes "demonstrable" prejudice from a violation—that is, prejudice that is not "presumed based on a constitutional violation"—is any sanction greater than suppression available. *United States v. Esformes*, 60 F.4th 621, 632-33 (11th Cir.), *cert. denied*, ___ U.S. ___, 144 S. Ct. 485 (2023). The types of prejudice recognized by the Eleventh Circuit in these circumstances include the government's use of the privileged material as the basis for the charges against the defendant, as evidence at trial, or for strategic advantage. *Id.* When a defendant fails in her burden of demonstrating prejudice, and merely "speculates that the [g]overnment's access of privileged information infected the case," only suppression of the privileged information is warranted, even where a member of the prosecution viewed the offending material. *United States v. Deluca*, No. 6:11-CR-221-ORL-28, 2014 WL 3341345, at *7-8 (M.D. Fla. July 8, 2014), *aff'd*, 663 F. App'x 875 (11th Cir. 2016).

Here, assuming the communications in question are indeed privileged and were disclosed to the prosecution as she contends, Ms. Jackson has still "failed to even show how any of the emails . . . if seen by the prosecution team, *could have* prejudiced [her]—[s]he points to no emails that contained 'smoking gun'

evidence of guilt or that identified additional witnesses or facts that could be used by the prosecution." *Deluca*, 2014 WL 3341345, at *8. Instead, the privileged communications—even including the second screenshot—consisted of Mr. Kish's general updates that the case had not been closed, his observation that investigations may last a long time and that the lack of updates from the government was not unusual, and his admonition that Ms. Jackson and her wife not discuss the case with others. [*See* Docs. 235-1, 235-2.] Ms. Jackson fails to identify any prejudice whatsoever from the disclosure of these materials—indeed, she not even use the word "prejudice" in her motion or supplement [*see* Docs. 186 and 229], and the undersigned cannot envision any prejudice to Ms. Jackson from their disclosure. There is nothing incriminating in these communications, nor anything that might provide the government with any strategic advantage. Moreover, they were made post-indictment, and thus could not have informed the charges against Ms. Jackson; there is no dispute they were never going to be used as evidence at trial; and the government now affirms it will remove the offending materials from what is provided to the prosecution, thereby suppressing it voluntarily. *See Esformes*, 60 F.4th at 632-33. And without evidence of demonstrable prejudice, sanctions beyond suppression of the

12

offending material are simply not warranted, even "in the case of [] the most egregious prosecutorial misconduct." *Id.* at 633 (quoting *United States v. Merlino*, 595 F.2d 1016, 1018 (5th Cir. 1979)) (marks omitted).

Accordingly, Plaintiff's Motion to Suppress should be **DEEMED MOOT** with regard to the potentially privileged information the government has identified and will voluntarily suppress, and **DENIED** with respect to the other information obtained from her phone.

And while Ms. Jackson demands an evidentiary hearing, speculating that the disclosure of the text message thread and the first screenshot might have "led to the discovery of other evidence," this speculation does not warrant a hearing. The Court has considered all of the alleged facts, and even assuming their truth, Ms. Jackson has not offered any allegations that would change the result. The government has identified all the potentially attorney-client privileged communications on her phone and agreed to suppress all of those communications (as well as communications between Ms. Jackson and her wife that are potentially protected by the martial privilege). Ms. Jackson, meanwhile, fails to identify any additional material that is privileged or otherwise protected; does not explain how the disclosure of any of the potentially privileged

13

communications above might lead to the discovery of incriminating evidence against her; and does not identify any demonstrable prejudice resulting from the conduct of the prosecution or filter team. And without more, it is clear that an evidentiary hearing is unnecessary. *See United States v. Horne*, 198 F. App'x 865, 870 (11th Cir. 2006) (finding that trial court was under no obligation to hold an evidentiary hearing when neither suppression motion "raised a disputed issue of fact that required resolution in an evidentiary hearing") (citing *Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1322 (9th Cir. 1988)); *United States v. Williams*, 199 F. App'x 860, 861 (11th Cir. 2006) ("A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture") (quoting *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)); *see also Richardson*, 764 F.2d at 1527 (explaining that a district court "may refuse a defendant's request for a suppression hearing 'if the defendant fails to allege facts that, if proved, would require the grant of relief"); *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984) ("The concepts of due process do not require that a defendant who fails to make the fundamental allegations in his motion to suppress be afforded a pretrial hearing on his motion."). Thus, Ms. Jackson's request for an evidentiary should also be **DENIED**.

### III. CONCLUSION

For reasons discussed above, it is **RECOMMENDED** that the Motion to Suppress [Doc. 186] be **DENIED**.

This Report and Recommendation resolves all matters pending before the undersigned relating to Ms. Jackson. The Court has not been advised of any other impediments, including the need for additional discovery, to the scheduling of a trial as to Ms. Jackson. Accordingly, this matter as to Ms. Jackson is **CERTIFIED READY FOR TRIAL**.

IT IS SO RECOMMENDED this 3rd day of September, 2025.

_____
JOHN K. LARKINS III
United States Magistrate Judge